Maurice BRABHAM, Appellant,

v.

UNITED STATES, Appellee.

Lee R. FERGUSON, a/k/a Leroy Ferguson, Appellant,

v.

UNITED STATES, Appellee.

Leslie A. SPRIGGS, Appellant,

v.

UNITED STATES, Appellee.

George HOCKADAY, Appellant,

v.

UNITED STATES, Appellee.

Nos. 7152, 7169, 7171 and 7176.

District of Columbia Court of Appeals.

Argued July 10, 1974.

Decided Oct. 9, 1974.

17. Counsel for respondent stated at oral argument that vending machine income records are still in existence.

Ernest W. Jennes, Washington, D. C., appointed by this court, with whom Rodney E. Gould, Washington, D. C., was on the brief, for appellant in No. 7152.

Marsha E. Swiss, Washington, D. C., appointed by this court, for appellant in No. 7169.

Thomas W. Farquhar, Washington, D. C., appointed by this court, for appellant in No. 7171.

Leonard I. Rosenberg, Washington, D. C., appointed by this court, for appellant in No. 7176.

David R. Addis, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and James F. McMullin, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING and NEBEKER, Associate Judges, and QUINN, Associate Judge, Retired.

FICKLING, Associate Judge:

Appellants Maurice Brabham, Lee R. Ferguson, Leslie A. Spriggs and George Hockaday, were convicted in a jury trial of attempted armed robbery (D.C.Code 1973, § 22–2902). Appellants Brabham and Hockaday were also convicted of second degree murder (D.C.Code 1973, § 22–2403). There are three principal issues raised by the appellants: (1) whether prosecutorial misconduct, by the use of leading questions on direct examination, irreparably prejudiced the appellants' trial; (2) whether appellants possess standing to exclude the testimony of a co-defendant who was granted "use" immunity when the witness was advised that failure to cooperate with the prosecution could lead to indefinite incarceration; and (3) whether appellant Brabham's trial should have been severed from the case under authority of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), since testimony admissible solely against his co-defendants was prejudicial towards Brabham. We affirm.

On May 6, 1972, Harold "Big Ace" Williams, a neighborhood narcotics peddler, and Eugene R. Freeman, an admitted narcotics user, left a pool hall and proceeded toward the Whitelaw Hotel where a narcotics transaction was to take place. Enroute, Williams was stopped by a group of men consisting of the four appellants here, together with Arnold O'Neil Bethea, the government's chief witness, Rufus Wesley Fowkes, and one Strater. After the brief encounter on the street, Williams continued toward the Whitelaw to meet Freeman. The group then formulated a plan to rob Williams of his narcotics and proceeded to the Whitelaw, where Williams was shot by Strater during the attempted robbery and died as a result thereof.

Mr. Bethea, after being granted "use" immunity, testified for the government that after the shots were fired, Strater ran out of the hotel and tossed the gun to Bethea. Mr. Freeman, who also testified for the government, stated that after the shots were fired, he, Freeman, saw Bethea run up the inside stairs of the hotel with the pistol protruding from his belt.

■ Appellants' contention that they were prejudiced by the prosecutor's use of leading questions is not supported by the record. The able trial judge promptly sustained objections to leading questions propounded by both prosecutor and defense counsel and, sua sponte, cautioned counsel against their use. Further, the jury was instructed in detail concerning the effect and use of leading questions. Thus, we must assume, as we did in Smith v. United States, D.C.App., 315 A.2d 163 (1974), that the jury understood and obeyed the court's instructions.

Appellants next contend that when Judge Hart (now Chief Judge) of the United States District Court granted immunity to the government's key witness,[1] he erroneously led the witness into believing that if he did not cooperate with the prosecution, he would face life imprisonment. Such a misunderstanding by the witness, it is argued, could lead to perjured testimony. The government counters by asserting that a grant of immunity cannot be challenged by these defendants since they lack standing to raise the issue. We agree. *Compare* Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

■ Appellants would have us overturn the jury's verdict based on the claim that Judge Hart improperly informed the witness of the possible consequences should he fail to testify. Such a challenge, however, can only be made by one to whom the alleged improper statement was made, *i. e.*, the person harmed by the statement. Appellants cannot, as they seek to do here, vicariously assert another's rights. *Cf.* Alderman v. United States, *supra*.

We carefully point out that we give no opinion whatsoever as to the propriety of the judge's remarks because appellants are without standing to challenge those remarks. In addition, the trial court followed the holding of Long v. United States, 124 U.S.App.D.C. 14, 19, 360 F.2d 829, 834 (1966), which states that the jury may be informed as to the circumstances surrounding the witness' testimony in order that they may better assess the witness' credibility.

Lastly, we have before us a contention by appellant Brabham that his case should have been severed under the authority of Bruton v. United States, *supra*.

■ ■ The foundation of the appellant's claim is that certain statements attributed to his co-defendants, admissible solely against those co-defendants, prejudicially implicated the appellant. In the case of Smith v. United States, D.C.App., 312 A.2d 781 (1973), this court had an opportunity to review the *Bruton* doctrine. That doctrine is founded upon the Sixth Amendment right of the accused to confront the witnesses against him. The doctrine requires that (1) the statement admissible against the co-defendant directly implicates the appellant; (2) the statement was made by one whose interest is adversely affected and who is not a government informant; and (3) the statement itself is as "powerfully incriminating" as a confession. Smith v. United States, *supra*, 312 A.2d at 787; United States v. Lemonakis, 158 U.S.App.D.C. 162, 485 F.2d 941 (1973). In addition, there must be no independent evidence of guilt. Smith v. United States, *supra*, 312 A.2d at 787. If there is such evidence, then the possibility that the jury understood the statement, contrary to the trial judge's instruction, as incriminating the accused becomes harmless error.[2]

■ Under the facts of this case, the government's witness, Mr. Bethea, prior to his testimony was kidnapped by appellants Hockaday and Spriggs. During Bethea's detention his life and the lives of the members of his family were threatened. Immediately subsequent to Bethea's release, he recorded the following:

> One night as I was trying to get a cab . . . I ran into Leslie Spriggs. . . . [H]e grabbed me by the coat. . . . And he told me that he had heard that I was out on personal bond . . . . So we went around the corner to where George Hockaday was and I showed them my bond papers . . . That is when I found out that they had planned to kill me . . . . That is

1. Although trial of the instant case was held in the Superior Court of the District of Columbia, the order of immunity was issued by the United States District Court. In re Bethea, Misc. No. 121–72 (D.D.C., issued Nov. 14, 1972).

2. *See* Brown v. United States, 411 U.S. 223, 230–232, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); United States v. Lemonakis, *supra*.

when I found out that they had to say that I was the one who did everything meaning George Hockaday, Leslie Spriggs, Maurice Brabham, Leroy Ferguson and Folks [*sic*] were going to get themselves together and say I was the one. . . .

Although the statement implicated appellant Brabham, it is not the "powerfully incriminating" type contemplated by the Supreme Court in *Bruton*. Here there is a mere inference of guilt; there is no admission that the co-defendants killed Williams or that Brabham was involved in the kill-

ing of Williams. Furthermore, there is clearly independent evidence of guilt. Two witnesses who were in close proximity to the incident gave testimony against Brabham. Such evidence is not the "small quantum of independent evidence" described by Smith v. United States, *supra*, 312 A.2d at 787, as insufficient to support a conviction. Therefore, appellant Brabham's argument fails and his conviction is affirmed.

No. 7152, affirmed; No. 7169, affirmed; No. 7171, affirmed; No. 7176, affirmed.